UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALICE C. GRANT,

        Plaintiff,

v.                              Case No.  8:20-cv-3045-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

        Defendant.

_____/

**ORDER**

    Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.      Procedural Background**

    Plaintiff filed an application for DIB on April 30, 2019 (Tr. 174–79).   The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 103–05, 110–15).  Plaintiff then requested an administrative hearing (Tr. 123).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 34–57).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

disabled and accordingly denied Plaintiff's claims for benefits (Tr. 17–28). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–5). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.      Factual Background and the ALJ's Decision

Plaintiff, who was born in 1958, claimed disability beginning February 15, 2019 (Tr. 20, 174–79). Plaintiff completed a high school education (Tr. 41, 198). Plaintiff's past relevant work experience included work as a unit clerk (Tr. 42–43, 198). Plaintiff alleged disability due to back injury and lupus, with arthritis causing multiple joint pain, fatigue, migraine headaches, and anxiety (Tr. 44–48, 197).

In rendering the administrative decision, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 15, 2019 (Tr. 22). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative joint disease of the thoracic spine, degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the right hip, degenerative joint disease of the bilateral feet, osteoarthritis of the bilateral hands, unspecified diffuse connective tissue disease, and obesity (Tr. 22). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with additional limitations

2

(Tr. 24).[2]   In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 26).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work (Tr. 28). Accordingly, the ALJ found Plaintiff not disabled (Tr. 28).

### III.    Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological

---

[2] The ALJ found Plaintiff had the RFC to perform sedentary work "except she can occasionally push/pull with the bilateral lower extremities; she can frequently push/pull with the bilateral upper extremities; she can occasionally perform all postural activities but never climb ladders, ropes, or scaffolds; she can frequently handle and finger bilaterally; she is limited to work that is indoors to avoid direct sunlight; she must avoid extreme temperatures, humidity, and vibration; and she is limited to no more than occasional exposure to workplace hazards such as unprotected heights and moving machinery" (Tr. 24).

abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration ("SSA"), in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.    Analysis**

Plaintiff raises three issues on appeal: (1) the ALJ's RFC finding of sedentary work is not supported by substantial evidence; (2) the ALJ's finding of ability to perform past relevant work is not supported by substantial evidence; and (3) the ALJ failed to properly evaluate Plaintiff's subjective complaints. For the reasons that follow, the ALJ applied the correct legal standards, and her decision is supported by substantial evidence.

### A. RFC Finding

First, Plaintiff argues the ALJ erred in determining Plaintiff had the RFC to perform sedentary work (Doc. 22 at 8).  Plaintiff suggests the RFC finding of sedentary work which contemplates that she can lift up to ten pounds at a time, can sit for most of an eight-hour workday, and can occasionally stand or walk, is inconsistent with the medical evidence and her own subjective complaints of pain (*Id.* at 9).  The Commissioner argues the ALJ properly assessed Plaintiff's RFC and adequately accounted for Plaintiff's impairments by restricting her to sedentary work (Doc. 22 at 11).

Substantial evidence supports the ALJ's finding that Plaintiff can perform a reduced range of sedentary work.  In reaching this decision, the ALJ considered radiology reports, objective findings from treatment notes, treatment modalities used for Plaintiff's impairments, and Plaintiff's reported daily activities.

In her decision, the ALJ acknowledged Plaintiff's "consistent complaints of neck/back pain, hip pain, and bilateral hands/feet pain" (Tr. 26).  In regards to Plaintiff's complaints of neck and back pain, the ALJ relied on both medical imaging and physical examination reports indicating mostly mild or normal findings.  The ALJ noted that prior to the alleged onset date of February 15, 2019, an MRI of the cervical spine on March 22, 2011, revealed disc bulges at C2-C3, C3-C4, and C5-C6 levels, impinging on the thecal sac (Tr. 26, 266).  An MRI of the lumbar spine on March 22, 2011, revealed L4-5 and L5-S1 bilateral facet joint hypertrophy, and a disc bulge at the L4-5 level, impinging upon the thecal sac and causing mild-to-moderate bilateral neuroforaminal narrowing (Tr. 26, 267).  On January 24, 2011, cervical and thoracic spine X-rays indicated osteoarthritic or

hypertrophic type changes (Tr. 26, 268–69).  On June 12, 2018, X-rays of the lumbar spine showed mild degenerative changes (Tr. 26, 375, 400).  After the onset date, X-rays of the cervical spine on June 28, 2019, revealed mild degenerative changes (Tr. 26, 513).  However, the ALJ noted that an MRI of the cervical spine on August 9, 2019, was normal (Tr. 26, 543).  In addition to radiology findings, the ALJ considered hospital examination notes that "consistently indicated normal range of motion, normal alignment, and no step-offs of the back" (Tr. 26).  She also found that "[n]eurological examination notes consistently indicated intact sensory, no motor deficits, and no focal deficits[,]" and that "[p]rimary care examination notes also consistently indicated normal gait, intermittent back muscle spasm, and normal inspection/range of motion of the thoracic, cervical, and lumbar spine" (Tr. 26–27).

A review of the records supports the ALJ's findings.  Musculoskeletal physical examination notes from the Bond Clinic, P.A., where Plaintiff received regular treatment for foot, spinal, and related joint pain (*see* Doc. 22 at 5), revealed normal inspection and range of motion for the cervical, thoracic, and lumbar spine (Tr. 580, 723, 741, 759).  And while back exam showed "upper trapezius muscle spasm[,]" muscle strength was symmetrical and adequate for Plaintiff's age, no significant deformities were noted, and the joint exam revealed "no significant synovitis of peripheral joints or tenderness to palpation" (Tr. 470, 586, 592, 716, 753).

In October of 2019, Plaintiff reported to the emergency department for abdominal pain (Tr. 616, 625).  Hospital notes revealed that Plaintiff reported no back or muscle pain, and was able to ambulate with a steady gait (Tr. 625, 630, 669, 675).  Musculoskeletal

physical exam notes indicated nontender back, normal range of motion and strength, no swelling, and no deformity (Tr. 616, 625, 627, 632–33, 671).

The ALJ also adequately addressed Plaintiff's complaints of hip and knee pain. The ALJ noted X-rays of the right hip in March of 2018 revealed mild degenerative changes, and X-rays of the left knee from September 26, 2019, were normal (Tr. 27, 580, 682).   In addition to X-ray imaging, the ALJ relied on hospital examination notes "consistently indicat[ing] normal musculoskeletal with full strength and full range of motion" (Tr. 27, 616, 625, 627, 633, 671).   Physical examination notes from the Bond Clinic during the relevant period similarly indicated normal inspection and range of motion of the bilateral hips and knees, with intermittent swelling of the knees (Tr. 27, 723, 741, 765).   And neurological examination notes from Plaintiff's hospital and primary care visits revealed no deficits, with normal gait and coordination (Tr. 27, 616, 627, 633, 671, 723, 753, 759).

The ALJ considered Plaintiff's complaints of bilateral hands and feet pain.   The ALJ noted that "[p]odiatry treatment notes in February of 2019 indicated diagnoses of right foot plantar fasciitis, deformities of the bilateral feet, and osteoarthritis of the bilateral feet" (Tr. 27).   X-rays of the right foot on June 28, 2019, "revealed no acute fracture, normal joint space alignment, no soft tissue abnormality, and Achilles calcaneal enthesopathy" (Tr. 27, 514).   And contemporaneous X-rays of the left foot, "were unremarkable with the exception of mild soft tissue swelling" (Tr. 27, 515).   The ALJ noted that "[t]he record indicated conservative treatment by medication and injection" (Tr. 27).   As to Plaintiff's complaints of bilateral hands pain, while the record did not

include radiology studies, "[m]usculoskeletal examination notes in July of 2019 indicated mild bilateral osteoarthritis of the hands" (Tr. 27, 580).  This report is consistent with subsequent physical examinations revealing mild osteoarthritis in the left and right hand (*see* Tr. 723, 741, 758).

Further, the ALJ considered Plaintiff's "consistent complaints of generalized joint pain, morning stiffness, occasional headaches, and fatigue" (Tr. 27).  The ALJ noted that while "[m]usculoskeletal examination notes indicated diffuse joint tenderness and intermittent swelling[,] . . . neurological examination notes consistently indicated normal gait/coordination, no motor/sensory deficits, full strength, and intact reflexes" (Tr. 27, 723, 741, 753, 759, 765).  The ALJ found that Plaintiff received conservative treatment by medication and monitoring (Tr. 27).

In addition to the medical evidence, the ALJ considered Plaintiff's own testimony and reported activities that "she lived independently with her retired husband and capable of performing, with some difficulties, a wide range of activities of daily living such as personal care, household chores, preparing simple meals, shopping, and driving short distances with a valid driver's license" and that "she enjoyed watching television, taking short walks, reading, and attending church" (Tr. 26, 49–50, 218–220, 225).

Based on the objective medical evidence, conservative treatment history, and Plaintiff's daily activities, the ALJ concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the evidence (Tr. 23).  As more fully explained in the subsequent sections, this determination is supported by substantial evidence.

Plaintiff argues the RFC assessment finding her capable of sedentary work does not account for Plaintiff's "complaints of fatigue and generalized anxiousness and a short temper when relating to or with others, or of being off-task during the workday" (Doc. 22 at 10).  The ALJ acknowledged Plaintiff's testimony that "she suffered from generalized anxiousness, became short tempered and was easily irritated by others" (Tr. 23).  The ALJ found that "[c]onsistent with the claimant's testimony, primary care treatment notes in July of 2019 indicated diagnoses of anticipatory anxiety and mild depression[,]" and that "[t]reatment notes indicated mild depression on the PHQ9 depression screening" (Tr. 23, 576, 580–81).  However, the ALJ noted that "psychiatric examination notes indicated no suicidal/homicidal ideation, normal memory, fully oriented, appropriate appearance, and good hygiene" (Tr. 23, 576, 579).  The ALJ also relied on primary care treatment notes at other visits, podiatry treatment notes, and hospital treatment notes, consistently describing Plaintiff as fully oriented, cooperative, with appropriate mood/affect, normal speech, normal recent/remote memory, no motor/sensory deficits, no suicidal ideation, normal insight/judgment, and no perceptual deficits (Tr. 23–24, 365–66, 387, 416, 434, 445, 453, 460, 470, 553, 580, 586, 592, 616, 625, 627, 633, 671, 675, 716, 723, 741, 747, 753, 759, 765).  The ALJ noted "[t]he record did not indicate any past/on-going treatment through a mental health professional, emergency care, or psychiatric hospitalization" (Tr. 24).

The ALJ stated she found persuasive the opinion of state agency psychological consultant Jennifer Meyer, Ph.D. (Tr. 25).  On August 23, 2019, Dr. Meyer opined that Plaintiff's mental impairments were not severely limiting.  Dr. Meyer based her findings on treatment notes indicating no significant psychiatric difficulties, a diagnosis of mild

depression with transient symptoms, and conservative treatment where Plaintiff was prescribed Xanax for anxiety related to the use of an MRI (Tr. 91–92).

In the broad functional areas of mental functioning for evaluating mental disorders, the ALJ concluded Plaintiff had no limitations in understanding, remembering, or applying information, and in adapting or managing herself, and mild limitations in interacting with others, and concentrating, persisting, or maintaining pace (Tr. 23).  Based on this finding, the ALJ was not required to include mental limitations in the RFC assessment. *See Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-CV-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) ("Notably, an ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria."); *see also Sprague v. Colvin*, No. 8:13-CV-576-T-TGW, 2014 WL 2579629, at *6-7 (M.D. Fla. June 9, 2014) (concluding that the ALJ did not err in the RFC finding by omitting mild functional limitations relating to a mental impairment).

Plaintiff contends the facts of her case are similar to *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019).  In *Schink*, the Eleventh Circuit found the ALJ erred in the RFC analysis by failing to include any mental limitations even though multiple doctors opined that the claimant had "marked" limitations, and treatment records regularly noted instability, including a one-week psychiatric hospitalization for suicidal thoughts and depression.  *Id.* at 1254-70.  In contrast, the ALJ in this case adequately analyzed the evidence and concluded that Plaintiff's mental impairments did not cause more than minimal limitations (Tr. 24–23).

Thus, the Court finds no error in the ALJ's RFC determination that Plaintiff was capable of sedentary work with some limitations. *See, e.g., Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1306 (11th Cir. 2018) (finding that substantial evidence supported RFC of sedentary work where claimant had mild spine and joint problems, a full range of motion, and no gait disturbance); *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 895-96 (11th Cir. 2010) (substantial evidence supported RFC of sedentary work where claimant could walk effectively with a cane, had no loss of motion or deformity in major joints, and had only mild lumbar paravertebral muscle spasms).   Plaintiff's argument here is, in essence, that there is evidence in the record that could support a different RFC determination.   This is outside of the scope of this Court's review. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner. . . even if the evidence preponderates against the decision.") (citations and quotations omitted); *Thomas v. Comm'r of Soc. Sec.*, No. 3:19-cv-943-J-PDB, 2020 WL 5810234, at *3 (M.D. Fla. Sept. 30, 2020) ("The mere existence of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings.") (citations and quotations omitted); *see also Stout v. Comm'r of Soc. Sec.*, No. 2:21-cv-164-MRM, 2022 WL 2115484, at *3 (M.D. Fla. June 13, 2022) ("Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence

preponderates against the Commissioner's decision.") (citations and quotations omitted). Accordingly, the Court finds the ALJ's RFC assessment is supported by substantial evidence, and remand for reconsideration of Plaintiff's RFC is unwarranted.

### B. Ability to Perform Past Relevant Work

Next, Plaintiff argues the ALJ erred at step four of the sequential evaluation process when she found Plaintiff capable of performing her past relevant work as a unit clerk (Doc. 22 at 19). Plaintiff contends objective medical evidence, clinical findings, and her own testimony support greater limitations than the ALJ included in the hypothetical question to the VE. In response, the Commissioner argues the ALJ adequately assessed Plaintiff's RFC, incorporated the RFC in the hypothetical question to the VE, and based on the testimony of the VE, properly determined that Plaintiff could perform her past relevant work (Doc. 22 at 20).

As discussed above, at step four of the sequential evaluation process, the ALJ assesses a claimant's RFC. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. Based on the RFC assessment, the ALJ determines whether the claimant can perform her past relevant work. The testimony of a VE "is not required in determining whether a claimant can perform her past relevant work." *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2005) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir.1990)). Nevertheless, "the regulations provide that 'the services of vocational experts or vocational specialists' may be used in making this determination because such an expert 'may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant

actually performed it or as generally performed in the national economy.'" *Id.* (citing 20 C.F.R. § 404.1560(b)(2)).

Here, as discussed above, after consideration of the evidence of record, the ALJ properly assessed Plaintiff's RFC, and found Plaintiff capable of sedentary work with limitations (Tr. 24–28). The ALJ then asked the VE to consider a hypothetical which included work at the sedentary exertional level with the additional limitations (Tr. 53–54). The VE testified that Plaintiff could perform her past relevant work as a unit clerk, which is light but actually performed as sedentary. Based on the testimony of the VE and comparing Plaintiff's RFC with the physical and mental demands of this work, the ALJ concluded that Plaintiff was "able to perform it as actually performed" (Tr. 28).

Plaintiff argues the hypothetical question was incomplete because it did not include her complaints of pain and "other nonexertional impairments" (Doc. 22 at 19).[3] However, when the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the hypothetical posed to the VE. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). Despite Plaintiff's disagreement with the RFC, the ALJ's hypothetical question to the VE included all of the limitations in the RFC assessment, and nothing more was required.

---

[3] Plaintiff also challenges the ALJ's hypothetical question to the VE in her objection to the ALJ's RFC finding (*see* Doc. 22 at 10). Because this issue is directly related to the ALJ's step four determination finding Plaintiff capable of performing her past relevant work, the Court addresses it in this section.

Plaintiff also contends the ALJ should have applied the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly referred to as "the Grids"), directing a finding of disabled (Doc. 22 at 19–20).  However, the Grids do not apply until step five of the sequential evaluation process, where a claimant is not capable of performing past relevant work.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (rejecting a claimant's argument that the ALJ should have applied the Grids "because the Grid is applied only if the claimant is unable to perform 'his or her vocationally relevant past work.'") (citing 20 C.F.R. 404, Subpart P, Appendix 2, § 200.00(a)); *Sims v. Comm'r of Soc. Sec.*, No. 3:12-cv-1262-J-MCR, 2013 WL 5567412, at *7 (M.D. Fla. Oct. 9, 2013) (finding the Grids not applicable since the ALJ's evaluation ended at step four). Here, at step four the ALJ found Plaintiff capable of performing her past relevant work and did not proceed to step five.  As such, the ALJ did not err in failing to consult the Grids.

Accordingly, substantial evidence supports the ALJ's decision that Plaintiff could perform her past relevant work.

### C.  Subjective Complaints of Pain

Finally, Plaintiff argues the ALJ improperly evaluated her subjective complaints of pain (Doc. 22 at 22).  Specifically, Plaintiff contends the ALJ erred in finding her statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence and other evidence in the record (*Id.*; Tr. 26). The Commissioner argues the ALJ properly found Plaintiff had severe impairments that could cause pain, and accommodated those impairments by restricting Plaintiff to sedentary work (Doc. 22 at 29).  According to the Commissioner, to the extent the ALJ

found Plaintiff's subjective complaints unsupported by the evidence, the ALJ properly articulated her reasoning, and her conclusion is supported by substantial evidence (*Id.*).

In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence.   20 C.F.R. § 416.929(a).  "Once a claimant establishes that his pain or other subjective symptoms are disabling, 'all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability.'"  *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 155 (11th Cir. 2021) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints.  The standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications, and (5) treatment or measures taken by the claimant for relief of symptoms."  *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).   If an ALJ rejects a claimant's

16

subjective testimony, he must articulate explicit and adequate reasons for his decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).[4]

The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 416.929(c)(2). "Other evidence" includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 416.929(c)(3). In the end, subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ relied on boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 26). This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, No. 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted* 2013 WL 1694841 (M.D. Fla. Apr. 18, 2013). And here, the ALJ's conclusion is supported by substantial evidence.

---

[4] In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA eliminated the use of the term "credibility" from its sub-regulatory policy, as the regulations do not use this term. SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017). This change "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Id*.

Plaintiff argues that it has produced objective medical evidence of MRI studies that confirms her subjective complaints associated with her severe impairments, including degenerative joint disease of the thoracic spine, right hip, and bilateral feet and hands, and degenerative disc disease of the cervical and lumbar spine (Doc. 22 at 23).  As discussed above, the ALJ considered MRI imaging, and noted that X-rays of the cervical spine in June 2019 revealed mild degenerative changes, while an MRI of the cervical spine in August of 2019 was normal (Tr. 26, 513, 543).  X-ray imaging of the left knee in September of 2019 was normal (Tr. 27, 682).  X-ray imaging of the right foot in June of 2019 was largely normal, while X-rays of the left foot "were unremarkable with the exception of soft tissue swelling" (Tr. 27, 514, 515).

In addition to radiology studies, Plaintiff argued that "specialized evaluations and physical examinations" also confirmed the severity of her symptoms (Doc. 22 at 23). However, physical examination notes from the Bond Clinic where Plaintiff was treated for foot, spinal, and related joint pain, consistently revealed normal neurological findings, including sensory and motor (Tr. 586, 592, 716, 723, 741, 753, 759, 765).  While some physical examination notes indicated back muscle spasm and mild swelling of the left knee, Plaintiff was also noted to have normal gait, normal inspection and range of motion of the cervical, thoracic, lumbar spine, and normal inspection and range of motion of the elbows, hips, and knees (Tr. 586, 592, 723, 741, 753, 759, 765).

Similarly, hospital examination notes consistently indicated normal neurological findings, including sensory and motor, and normal musculoskeletal findings, including nontender back, normal range of motion, no swelling, and no deformity (Tr. 616, 625,

627, 632–33, 671).  At the time of her hospitalization in October of 2019, Plaintiff denied

back, muscle, or joint pain, and was noted to ambulate with a steady gait (Tr. 630, 669,

675).

    As discussed above, the ALJ also considered Plaintiff's testimony at the hearing

and Plaintiff's own reports of daily activities (Tr. 23, 26, 49–50, 218–220, 225).  Plaintiff

argues her ability to perform these activities does not show she can sustain full-time

employment (Doc. 22 at 27).  Plaintiff cites to several cases in support of her contention

that minimal daily activities are not dispositive evidence of one's ability to perform

sedentary work.   However, as contemplated by the regulations, the ALJ considered

Plaintiff's reported daily activities as one of several factors relevant to her evaluation of

Plaintiff's subjective complaints.   In addition to Plaintiff's daily activities, the ALJ

considered objective medical evidence and treatment history.  Thus, the ALJ did not err

by relying on Plaintiff's reported daily activities as being inconsistent with Plaintiff's

limitations.  *See e.g., Green v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 516, 522 (11th Cir.

2017) (finding that daily activities such as caring for one's own personal needs, light

housework, preparing simple meals, shopping, and visiting with family and friends were

inconsistent with the claimant's alleged limitations).

    Plaintiff next challenges the ALJ's assessment of her subjective complaints by

pointing to treatment records which allegedly could have led the ALJ to find Plaintiff's

subjective complaints supported by the record (Doc. 22 at 24).  Plaintiff appears to suggest

that her having an impairment *necessarily* should result in the ALJ finding Plaintiff's

statements regarding the intensity, persistence, and limiting effects of her symptoms to be

consistent with the evidence.  Yet, as the Commissioner points out, ALJs evaluate the intensity, persistence, and limiting effects of a claimant's pain even if the underlying conditions are expected to cause pain.  *See* 20 C.F.R. § 416.929(c)(1) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work.").  Indeed, "the mere existence of these impairments does not reveal the extent to which they limit [plaintiff's] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6; *see also Fritts v. Saul*, No. 1:20-00064-N, 2021 WL 1183807, at *10 (S.D. Ala. Mar. 29, 2021) ("Fritts concludes her argument . . . by pointing to various other signs and diagnoses in the record that she claims support her subjective complaints of pain.  However, . . . the fact Fritts can cite to some evidence cutting against the ALJ's creditability determination does not warrant reversal, as an ALJ's factual determinations, if supported by substantial evidence, must be upheld even if the evidence preponderates against them.").

Plaintiff also argues that it is not evident the ALJ considered all of the evidence (Doc. 22 at 23).  However, as the Eleventh Circuit has stated, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer*, 395 F.3d at 1211 (quoting *Foote*, 67 F.3d at 1561).

Considering this, Plaintiff has not shown that the ALJ ran afoul of the Eleventh Circuit's pain standard. *See Holt*, 921 F.2d at 1221. As contemplated by the regulations, the ALJ considered objective medical evidence, treatment history, and Plaintiff's daily activities, and articulated specific and adequate reasons for finding Plaintiff's subjective complaints not entirely consistent with the evidence. *Foote*, 67 F.3d at 1561–62. To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err in considering Plaintiff's subjective complaints.[5]

## V.    Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is affirmed.

---

[5] The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth*, 703 F.2d at 1239.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on August 26, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE